UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLEY JANEEN BENTLEY,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:17-cv-1629-KJN<br><br><br><br>ORDER |

Plaintiff Kimberley Bentley seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") holding that plaintiff was not disabled for purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] Plaintiff filed a motion for summary judgment, which the Commissioner opposed by filing a cross-motion for summary judgment. (ECF Nos. 15, 16.) No optional reply brief was filed. For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 8.)

1

I.    BACKGROUND

Plaintiff was born on June 2, 1977; completed, but did not graduate from, high school; can communicate in English; and previously worked as a housekeeper, cashier, and bookkeeper. (Administrative Transcript ("AT") 87, 103-04, 138.)[2] On November 4, 2013, plaintiff filed an application for DIB, alleging that she was unable to work as of October 11, 2013, due to bipolar disorder and manic depression. (AT 155, 275, 307.) After plaintiff's application was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on February 24, 2016, and at which plaintiff, appearing with counsel, and a vocational expert ("VE") testified. (AT 100-41.) The ALJ subsequently issued a decision dated March 23, 2016, determining that plaintiff had not been disabled, as defined in the Act, from October 11, 2013, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 78-89.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on June 20, 2017. (AT 1-7.) Plaintiff subsequently filed this action on August 5, 2017, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.   ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ erroneously found certain conditions not severe at step two; (2) whether the ALJ improperly evaluated the medical opinion evidence; (3) whether the ALJ improperly discounted plaintiff's credibility; and (4) whether the ALJ erred in propounding an incomplete hypothetical to the VE.

III.  LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ found that plaintiff met the insured

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation

status requirements of the Act for purposes of DIB through December 31, 2017. (AT 80.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since October 11, 2013, plaintiff's alleged disability onset date. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; osteoarthritis of the wrists, hip, and knee; and bipolar disorder. (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 81.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC[4] as follows:

> …the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in CFR 404.1567(b) [sic], specifically the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for six hours out of an eight-hour workday; sit for six hours out of an eight-hour workday; and is limited to simple, unskilled, nonpublic work with only occasional fellow employee contact.

(AT 88.) At step four, the ALJ determined, based on the VE's testimony, that plaintiff was capable of performing past relevant work as a housekeeper. (Id.) Consequently, the ALJ concluded that plaintiff had not been disabled, as defined in the Act, from October 11, 2013, plaintiff's alleged disability onset date, through March 23, 2016, the date of the ALJ's decision. (AT 88-89.)

<u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

*Whether the ALJ erroneously found certain conditions not severe at step two*

Plaintiff contends that the ALJ erroneously failed to find plaintiff's borderline personality disorder, post-traumatic stress disorder ("PTSD"), attention deficit disorder ("ADD"), and ulnar neuropathy/carpal tunnel syndrome to be severe impairments at step two. That argument lacks

---

process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

[4] In this case, the ALJ actually made two alternative RFC assessments, both of which resulted in a non-disability finding. For purposes of this appeal, the court considers the ALJ's RFC assessment that was most restrictive, i.e., most favorable to plaintiff.

4

merit.

As for plaintiff's ulnar neuropathy/carpal tunnel syndrome, although plaintiff experienced related symptoms before and after a release surgery performed on August 1, 2012, the record documents no additional treatment after plaintiff's alleged disability onset date of October 11, 2013.

Additionally, as to borderline personality disorder, PTSD, and ADD, plaintiff essentially relies on a few scattered notations of such diagnoses in the record. (See ECF No. 15 at 17 [citing AT 435, 660, 818, 821].) It is well established that mere diagnosis of a condition is insufficient to demonstrate severity for purposes of step two. See Lay v. Colvin, 2016 WL 4035432, at *5 (D. Oreg. Jul. 25, 2016) ("While diagnosis is a prerequisite to finding a severe impairment, the mere diagnosis of any particular impairment does not presumptively demonstrate any related limitation in a disability analysis."). Moreover, the record contains no specific mental functional limitations attributable to those conditions that the ALJ failed to consider.

Therefore, the court finds no reversible error at step two.

*Whether the ALJ improperly evaluated the medical opinion evidence*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining

5

professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Contrary to plaintiff's contention, the ALJ properly discounted the opinion of psychiatrist Dr. Thomas Andrews. Dr. Andrews completed a two-page check-the-box form indicating that plaintiff was unable to meet competitive standards in every single mental ability on the form (based on "sx of mania, described as severe anger, insomnia as well as sx of depression"), would be absent for more than 4 days per month, but could nonetheless manage her own monetary benefits. (AT 727-28.) As the Commissioner points out, there is no evidence in the record that Dr. Andrews treated or personally examined plaintiff. Nevertheless, even if Dr. Andrews were plaintiff's treating psychiatrist, his opinion is entirely conclusory and supported by minimal, if any, clinical findings, and the ALJ justifiably gave it little weight. Furthermore, as the ALJ observed, Dr. Andrews's extreme opinion is inconsistent with the weight of plaintiff's treatment records during the relevant period, which documented largely mild mental status examinations. (AT 85.) Indeed, plaintiff's treating mental health care providers regularly assessed her with a GAF score of 70, indicative of only mild symptoms and difficulties. See Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).[6]

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

[6] The ALJ also inaccurately noted that Dr. Thomas was not a mental health professional. However, in light of the other proper grounds for discounting Dr. Thomas's opinion, the court finds that the ALJ's error was inconsequential to the ultimate non-disability determination.

The court also finds no error in the ALJ's consideration of the opinion of Dr. Harold Budhram, plaintiff's primary care provider. Dr. Budhram opined, based on a diagnosis of moderate to severe bipolar disorder, that plaintiff had limited but satisfactory ability to perform most mental activities for unskilled work, except that she was seriously limited but not precluded from dealing with normal work stress. (AT 729-30.) However, he also opined that plaintiff would be absent about 3 days per month. (AT 730.) The ALJ gave the opinion partial weight, but rationally found Dr. Budhram's determination that plaintiff would be absent 3 days per month to be without substantial support in the record. (AT 86.) Indeed, Dr. Budhram provided no clinical rationale for that restriction, which appears inconsistent with the largely mild mental examinations in the record. Moreover, as the ALJ reasonably noted, that restriction was also inconsistent with Dr. Budhram's opinion that plaintiff could satisfactorily perform unskilled work, including a specific finding that plaintiff had an unlimited or very good ability to maintain regular attendance and be punctual. (AT 86, 729.)[7]

Finally, the ALJ legitimately relied on the opinions of the state agency psychological consultants who opined that plaintiff could perform simple, unskilled tasks with incidental interpersonal contact. (AT 86, 150-52, 167-69.) Those opinions were largely consistent with plaintiff's treatment records documenting largely mild mental status examinations and mild GAF scores. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").

Consequently, the court finds that the ALJ's evaluation of the medical opinion evidence was supported by the record and by the proper analysis.

////

---

[7] As for Dr. Budhram's finding that plaintiff was seriously limited but not precluded from dealing with normal work stress, the court finds that the RFC adequately accounts for such a limitation, because simple, unskilled, nonpublic work with only occasional fellow employee contact logically involves significantly lower stress.

7

*Whether the ALJ improperly discounted plaintiff's credibility*

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

Here, the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's testimony regarding severe and disabling symptoms and functional limitations. The ALJ

reasonably found that plaintiff's subjective allegations were inconsistent with the weight of the treatment records, which, as discussed above, documented largely mild clinical findings and conservative treatment. (AT 85.) Additionally, the ALJ rationally concluded that plaintiff's allegations were belied by her activities, which included shopping, cleaning, cooking, caring for her 11-year old daughter, attending sports events, and walking 2.5 miles for exercise. (AT 84, 103, 107-09, 113, 683, 807.) "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting....Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted).

*Whether the ALJ erred in propounding an incomplete hypothetical to the VE*

For the reasons discussed above, the court concludes that the ALJ properly considered the medical opinion evidence and plaintiff's testimony, and that the RFC was supported by substantial evidence in the record as a whole. Consequently, the ALJ was not required to include any additional limitations in the RFC or any corresponding hypothetical to the VE.

V. CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is GRANTED.

3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.

////

////

9

4. The Clerk of Court shall close this case.

Dated: November 13, 2018

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE